UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DIANA MCKISSEN, an individual; CHERYL EAGLEY and RICHARD EAGLEY, as personal representatives and administrators of the ESTATES OF THERESA DAWN GARCIA; and CHERYL EAGLEY and RICHARD EAGLEY, on their own behalf;<br><br>Plaintiffs,<br><br>v.<br><br>CHRIS LEYENDECKER, personally and individually and in his official capacity acting under color of state law,<br><br>Defendant. | NO. CV-07-5033-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

On October 2, 2007, the Court held a hearing in the above-captioned matter. Douglas C. McDermott appeared on behalf of Plaintiffs Diana McKissen, Cheryl Eagley, Richard Eagley, and the Estates of Theresa Dawn Garcia. Mark Conlin Jobson appeared on behalf of Defendant Chris Leyendecker. Before the Court was Defendant's Motion to Dismiss and Brief in Support of Motion to Dismiss Per F.R.C.P. 12(b)(6). (Ct. Rec. 11.) After reviewing the submitted material and hearing oral argument, the Court was fully informed. The Court grants Defendant's motion to dismiss. The reason for the Court's order are set forth below.

ORDER * 1

## I. Background

The following facts are set forth in a light most favorable to Plaintiffs:

Richard Wilson had an extensive criminal record and spent much of his adult life either in prison or on supervised release with the Department of Corrections ("DOC"). Mr. Wilson's criminal history prompted the DOC to classify him as Risk Management-A, a designation for offenders whom are at the highest risk to re-offend. Defendant had an obligation to monitor Mr. Wilson's compliance with the terms and conditions of his Judgment and Sentence and other aspects of his community placement following his release from prison.

After Mr. Wilson's release from prison in March 2004, Defendant failed to appropriately monitor Mr. Wilson. For nearly two months, Defendant conducted no home visits, no office visits, no urinalyses, and no polygraphs. Mr. Wilson also missed several office visits, but Defendant took no action other than calling Mr. Wilson's mother to ascertain his whereabouts. During this time, Defendant received reports that Mr. Wilson had pawned stolen goods, that he was a suspect in a residential burglary, and that he might have absconded to Oregon.

Mr. Wilson had absconded to Oregon where he raped, tortured, and severely beat Plaintiff McKissen at gunpoint. Mr. Wilson then fled to Idaho where he shot and killed Theresa Garcia. Shortly thereafter, Mr. Wilson committed suicide in Utah after killing two other individuals in two separate robberies.

\\

\\

ORDER * 2

**II. DISCUSSION**

**A. <u>Standard of Review</u>**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Id.* In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept all material allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996). Motions to dismiss are viewed with disfavor and are rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986).

**B. <u>Analysis</u>**

Defendant moves to dismiss Plaintiffs' claims because private citizens have no federal right to be protected by the state from a private individual's actions. (Ct. Rec. 11 at 4.) Plaintiffs respond that the state-created danger doctrine is a well-established exception to the general rule that members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties. (Ct. Rec. 17 at 10.)

In *DeShaney v. Winnebago County Dept of Social Services*, 489 U.S. 189, 197 (1989), the Supreme Court held that a state's failure to protect an individual against private violence simply does not violate the Due Process Clause. This general rule "is modified by two exceptions: (1) the 'special relationship' exception; and (2) the 'danger creation exception.'" *Johnson v. City of Seattle*, 474 F.3d 634, 639 (2007) (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992)).

Here, Plaintiffs argue a constitutional violation only under the "danger creation" exception to the *DeShaney* rule. To prevail under the danger creation exception, a plaintiff must first show that "the state action affirmatively place[s] the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Johnson*, 474 F.3d at 639.

The Ninth Circuit has not addressed whether a parole officer can be liable under the state-created danger doctrine for negligently supervising a parolee. The Ninth Circuit has held state officials liable, in a variety of circumstances, for their roles in exposing plaintiffs to dangers they otherwise would not have faced. *See Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1989), *cert. denied* 498 U.S. 938 (holding police officer could be liable for the rape of a woman he left stranded in a high-crime area at 2:30 a.m.); *L.W. v. Grubbs,* 974 F.2d 583 (9th Cir. 1992) (holding state employees could be held liable for the rape of a registered nurse assigned to work alone in the medical clinic of a medium-security custodial institution with a known, violent sex-offender); *Penilla v. City of Huntington Park,* 115 F.3d 707 (9th Cir. 1997) (holding as viable a state-created danger claim against police

ORDER * 4

officers who, after finding a man in grave need of medical care, cancelled a request for paramedics and locked him inside his house); *Munger v. City of Glasgow,* 227 F.3d 1082 (9th Cir. 2000) (holding police officers could be liable for the hypothermia death of a visibly drunk patron after ejecting him from a bar on a bitterly cold night); *Kennedy v. City of Ridgefield,* 439 F.3d 1055 (9th Cir. 2006) (holding police officer could be liable for the death of a man after assuring his family the officer would take certain precautions before confronting a neighbor about molestation allegations).

**1. Affirmative Act vs. Omission**

In each Ninth Circuit case finding the state-created danger doctrine applies, the state actor's conduct rises to more than a mere failure to act and creates a particularized danger to the plaintiff. Plaintiffs argue that, under *Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978), a state actor's omission to perform an act that he is legally required to do is sufficient to create liability under the state-created danger doctrine. (Ct. Rec. 17 at 16.)

Plaintiff's claim is not entirely accurate. *Johnson* states that a state actor's omissions, generally, are sufficient to establish 42 U.S.C. § 1983 liability. *Id*. at 743. But *Johnson* predates *Wood*, the first Ninth Circuit case to recognize the state-created danger doctrine. Plaintiffs other case citations are not on point. That is, Plaintiffs did not cite a Ninth Circuit case addressing state-created danger that finds an omission sufficient to create state actor liability. Here, Defendant's actions, albeit egregious, are omissions. For several weeks, Defendant failed to conduct home visits, failed to conduct urinalysis,

failed to conduct polygraphs, and failed to follow up when Mr. Wilson missed office appointments. Based on how the Ninth Circuit applied the state-created danger exception in *Wood, Penilla, L.W., Munger,* and *Kennedy,* Plaintiffs' complaint fails to state a cause of action because Defendant did not affirmatively create a danger since Plaintiffs were distant both temporally and geographically from Walla Walla where Mr. Wilson was being supervised. In each Ninth Circuit case finding a state-created danger existed, the state actor's direct contact with the victim affirmatively created the danger. That was not alleged here nor could it be in any amended complaint. Therefore, dismissal is warranted.

## 2. **Particular Plaintiff**

Plaintiffs argue the Ninth Circuit has implicitly rejected any requirement that Defendant have knowledge of danger to a particular plaintiff. (Ct. Rec. 17 at 15.) Plaintiffs specifically point to *Cornelius v. Town of Highland Lake*, 880 F.2d 348, 354-59 (11th Cir. 1989), an Eleventh Circuit decision relied upon in *L.W.*, 974 F.2d at 122, and *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993), a Seventh Circuit decision relied upon in *Kennedy*, 439 F.3d at 1061. While the Ninth Circuit actually paraphrased *Cornelius*, it only cited to *Reed*, and neither case swayed the Ninth Circuit to reject any requirement that Defendant have knowledge of danger to a particular plaintiff. Because each Ninth Circuit case finding a state-created danger involved danger to a particular plaintiff, and that is not the case here, dismissal is appropriate.

### 3. Deliberate Indifference

If this Court concludes the Ninth Circuit recognizes omissions as "affirmative conduct," the Court must next decide whether Plaintiffs can demonstrate a plausible claim of "deliberate indifference." "Deliberate indifference is a stringent standard of fault, requiring proof that a [state] actor disregard[] a known or obvious consequence of his actions." *Kennedy*, 439 F.3d at 1064.

Viewing the facts in the light most favorable to Plaintiffs, Defendant disregarded a known or obvious consequence of his actions when he neglected to monitor Mr. Wilson for several weeks. Mr. Wilson was seen as a likely candidate to re-offend, prompting the DOC to classify him as "Risk Management-A." It is reasonable to infer that Defendant disregarded the obvious consequence that failing to monitor a parolee would lead to subsequent crimes, including rape and murder. But the Ninth Circuit has yet to recognize omissions as affirmative conduct, so Defendant's possible deliberate indifference, while troubling, is irrelevant.

### 4. Qualified Immunity

Because the Court concludes Defendant did not violate Plaintiffs' constitutional rights, it is unnecessary to determine whether Defendant is protected by the doctrine of qualified immunity.

### III. Conclusion

In horrific cases such as these, the Court must always readily acknowledge the awful acts by Mr. Wilson that injured the innocent victims and their families. The issue is not whether they can recover or whether the justice system provides a remedy; rather, it is whether

ORDER * 7

Plaintiffs can recover by bringing this specific cause of action for violation of Due Process rights under 42 U.S.C. § 1983. The Court holds that the facts alleged in the complaint do not and cannot support that particular cause of action. The Court notes, however, that the victims are not without a remedy. Plaintiffs have filed an action in state court to recover for their dreadful injuries under the theory of "negligent supervision," a remedy recognized by Washington courts that may be applicable here as it does not depend on violating the substantive due process rights found in the United States Constitution.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss **(Ct. Rec. 11)** is **GRANTED.**

2. Judgment is to be entered.

3. This case shall be closed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this ___2nd___ day of October 2007.

S/ Edward F. Shea<br>
EDWARD F. SHEA<br>
United States District Judge

Q:\Civil\2007\5033.Dismiss.wpd

ORDER * 8